THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RONALD HARLAND *et al.*, Defendant-Appellees.

Third District   No. 82—196

Opinion filed December 23, 1982.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Sue Augustus, both of State Appellate Defender's Office, of Ottawa, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Defendants Ronald Harland and Kenneth Tritt were indicted for burglary and theft and moved to suppress the evidence against them. After a hearing in the circuit court of Kankakee County, the motion was granted.

Four individuals testified at the suppression hearing, the defendants and the officers who effected the seizure. The defendants indicated that Harland was driving Tritt home in the early morning of May 13, 1981. Upon arriving at Tritt's residence, another vehicle pulled into his driveway. Two police officers stepped out of the second vehicle, called Tritt by name, and said that they had a warrant for his arrest. The officers did not know for what offense the warrant had been issued, and Tritt advised them he had appeared in the county in question and posted bond on the charge there pending. At that time, a second squad car arrived, and a third officer advised the first two that the warrant in question was no longer active. Upon receiving that information, one of the first two officers walked up to Harland's car, looked into it with the aid of a flashlight, and ordered defendants to assume the search position. Tritt said the officer took a pocket knife, screwdriver, and wristwatch from him; and Harland said he took a box of coins from him. There was no mention of any traffic offenses, and the officers had never activated their flashing red lights.

While there were a number of inconsistencies in their testimony, the officers testified essentially as follows. At approximately 1:36 a.m. on the morning in question, Deputy Sheriff Francis Hubert noticed Harland's vehicle approaching the squad car in which he and Deputy Sheriff Patrick Hardesty were patrolling the eastern section of Kankakee County. Harland's car then turned off the highway and again turned into Tritt's driveway without signaling either turn. The officers believed there was a warrant for Tritt's arrest and knew where he lived, as Hubert had previously attempted to arrest him on the warrant; however, they denied this was the reason they followed

Harland's vehicle into the driveway. Hubert believed Hardesty had activated the overhead lights, but Hardesty did not remember. As the squad car pulled to a stop, defendants left Harland's car and each officer approached a defendant on his side of the vehicles. Hubert asked Tritt to assume the search position, frisked him, and discovered a watch case. When Hubert asked his name, he told him and one of the officers mentioned the warrant. Hubert then frisked Harland and found what appeared to be a watch case and a box of coins. While Hardesty called the communication center to verify the validity of the warrant, Hubert walked up to Harland's car and, using his flashlight, looked inside. He saw a television, a tank, a box, a suitcase on which was the name Bill Padgett, and a pillowcase which appeared to be filled with frozen meat. Hubert then reached into the vehicle and seized a radiologist's statement addressed to JoAnne Padgett. The officer could not recall whether he had observed the statement from outside the automobile and was not certain but believed it may have been in the pillowcase. After verifying a burglary at the Padgett residence, the defendants were arrested for the crime.

The four witnesses testified to many other details of the events of the morning in question. Except as necessary in our discussion of the single issue presented, these details need not be recited. The issue is whether the trial court erred in suppressing the evidence as its conclusions of law and fact were allegedly patently erroneous.

The facts concerning the initial intrusion in this cause are clearly controverted. The officers testified that they pulled into the driveway because Harland had twice failed to signal turns. Defendants testified that Harland signaled both turns. Hubert stated an additional reason was that the automobile appeared to be missing a license plate; however, Hardesty had previously attempted to check the vehicle's registration from the front plate, which was apparently in place, and when the officers pulled into the driveway, they realized the back plate was similarly in place. The plate was, however, bent and could not be read. Nonetheless, nothing was said concerning the alleged failure to signal the turns nor the license plate. Hubert said the squad car's overhead lights were activated; defendants said not; Hardesty didn't recall. What conversation transpired at this time, if any, concerned the warrant the officers believed was in effect.

■■ At a hearing on a motion to suppress, it is the function of the trial court to resolve conflicts in the testimony and to assess the credibility of the witnesses. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) The court specifically found defendant's testimony to be "reasonable and credible" and that of the officers to be "vague, in-

consistent, and incomplete regarding the stop ***." Given these specific characterizations, we do not find that the initial intrusion of the officers was here justified. Accepting the court's evaluation of defendants' testimony, there were no turn signal violations. As for the license plate, it was not absent from the vehicle (*People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353, *cert. denied* (1976), 429 U.S. 871, 50 L. Ed. 2d 151, 97 S. Ct. 185), attached with wire (*People v. Wolf* (1975), 60 Ill. 2d 230, 326 N.E.2d 766, *cert. denied* (1975), 423 U.S. 946, 46 L. Ed. 2d 280, 96 S. Ct. 361), covered with dirt on an otherwise extremely clean car (*People v. Bradi* (1982), 107 Ill. App. 3d 594, 437 N.E.2d 1285), or the like. Moreover, the officers had apparently seen the front plate and, while it is not entirely clear from the record, it would appear the bent rear plate was not observed until after the intrusion.

▪ Once a trial court has ruled on a motion to suppress, a reviewing court will not disturb its order unless it is manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) Under the circumstances herein, we cannot so characterize the order to suppress.

Accordingly, the order of the circuit court of Kankakee County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.