STATE OF CONNECTICUT *v.* RAMON L. COLON

CIRCUIT COURT                                    SEVENTH CIRCUIT
                                                FILE No. CR 7-29233

Memorandum filed August 8, 1973

*Richard R. Brown,* assistant prosecuting attorney, for the state.

*Alan E. Silver,* of New Haven, for the defendant.

JACOBS, J. The defendant has moved to suppress for use as evidence against him "any papers or other documents pertaining to the registration and identification numbers of a 1969 Ford Galaxie 2 door hardtop bearing the Connecticut Registration No. 7187 B," on the ground that that evidence was obtained by means of a search which was conducted without either a search warrant or the consent of the defendant and which was not incident to a lawful arrest.

The following pertinent facts appear from the record: Officers of the Hartford police department went to a junk yard, where they observed a 1969 Ford with a missing public vehicle identification number (PVIN). After locating the Ford's hidden vehicle identification number (HVIN), which is the same as its PVIN on this particular model, the officers checked the number with the Connecticut department of motor vehicles and ascertained that a vehicle with that supposedly unique identification number was registered to a person—not the defendant—in North Haven, Connecticut. Later that afternoon the Hartford police officers, along with officers of the North Haven police department and an agent of the federal bureau of investigation, proceeded to the North Haven address and placed a 1969 Ford Galaxie under surveillance. At some point after the surveillance commenced, the defendant got into the automobile, drove it out of the driveway and proceeded south along Middletown Avenue. The car was then stopped by the North Haven officers, who asked the defendant to produce his driver's license and motor vehicle registration. This he did. Observing the PVIN through the windshield of the car and finding it to be identical to the HVIN of the 1969 Ford at the junk yard, the officers concluded that the PVIN had been tampered with and placed the defendant under arrest for violation of General

Statutes § 14-149, entitled "Mutilated Factory or engine number." The vehicle was then impounded and later determined to have been stolen from Springfield, Massachusetts.

## I

Courts differ as to the legality of obtaining a motor vehicle's identification number without a search warrant. Some have held a warrantless search to be illegal—and the number inadmissible in evidence—when the vehicle's inspection was not incident to a lawful arrest. *United States* v. *Nikrasch,* 367 F.2d 740 (7th Cir. 1966); *Simpson* v. *United States,* 346 F.2d 291 (10th Cir. 1965). Other courts, however, have admitted evidence of the number on the theory that the inspection which disclosed it was not a search within the meaning of the fourth amendment or, alternatively, that the search was reasonable or the accused lacked standing to contest it. *United States* v. *Williams,* 434 F.2d 681 (5th Cir. 1970); *United States* v. *Johnson,* 413 F.2d 1396, 1399 (5th Cir. 1969), aff'd on rehearing en banc, 431 F.2d 441 (5th Cir. 1970); *United States* v. *Graham,* 391 F.2d 439 (6th Cir. 1968); *Cotton* v. *United States,* 371 F.2d 385 (9th Cir. 1967).

We are inclined to view the approach to this problem taken by the Court of Appeals for the fourth circuit in *United States* v. *Powers,* 439 F.2d 373 (1971) as the proper one. That court relied on *Terry* v. *Ohio,* 392 U.S. 1 (1968), wherein the Supreme Court of the United States rejected the notion that when police stop and frisk a suspect their actions are not subject to the provisions of the fourth amendment. Police action in each case, the court held, involved governmental invasion of a person's privacy, and, therefore, its fruits were subject to the exclusionary rule of the fourth amendment.

"Similarly," it was held in the fourth circuit, "inspection of a vehicle's identification number, which necessarily requires examining parts of the car not in plain view, may intrude on the occupants' privacy by unlawfully detaining them. If the evidence that the inspection produces is to be used against them, it must be obtained . . . by conduct sanctioned by the Constitution." *United States* v. *Powers,* supra, 375.

The two most significant factors affecting the legality of a search for identification numbers are the mobility of a motor vehicle; *Carroll* v. *United States,* 267 U.S. 132, 153 (1925); and the expectation of privacy that a person may reasonably claim for those parts of his vehicle where identification numbers are posted. Cf. *Katz* v. *United States,* 389 U.S. 347, 361 (1967) (concurring opinion).

Inspection of a car's PVIN differs from a search of a vehicle and seizure of its contents in at least one important respect. The occupants of the car cannot harbor an expectation of privacy concerning the identification of the vehicle. Manufacturers are required by law to affix identification numbers, which are also recorded in registries where the police and other interested persons may inspect them. Since identification numbers are, at the least, quasi-public information, a search of the part of the car displaying the number is but a minimal invasion of a person's privacy. *United States* v. *Powers,* supra, 376. This is particularly so in a case like the present one, where the PVIN was obtained by merely looking through the windshield. A police officer, therefore, should be freer to inspect the numbers without a warrant than he is to search a car for purely private property.

The legality of the inspection should be tested by the objective standard stated in *Terry* v. *Ohio,* 392

U.S. 1, 21: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. *Carroll* v. *United States* [267 U.S. 132, 162] . . . ." In applying the *Terry* standard to vehicle identification numbers, the *Powers* court considered its suitability and reached a conclusion with which we concur: "Requiring more, such as probable cause, is unjustified because of the minimal invasion of privacy resulting from search of the parts of the vehicle where the identification numbers are placed, the quasi-public nature of the numbers, and the frequent need to check them expeditiously before the car is moved. Requiring less, or refusal to treat the inspection as a search, could thwart rights secured by the Fourth Amendment by subjecting the owners of vehicles to unrestrained governmental intrusion." *United States* v. *Powers,* supra, 376.

## II

The officers became understandably suspicious about the PVIN of the 1969 Ford parked in North Haven. Two different automobiles appeared to share the same supposedly unique identification number, for the reported PVIN of the 1969 Ford in North Haven was the same as the HVIN of the 1969 Ford at the junk yard. This coincidence quite reasonably alerted the police to the need for further investigation, and it alone furnished a legitimate reason for checking the PVIN. The search conducted was appropriately limited in scope and in all other respects reasonable.

In view of the foregoing, the defendant's motion to suppress is denied.